## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

HOWARD P. MORRIS, III,     )
               )
        **Petitioner,**   )
               )
**vs.**              )     **Case No. CIV-09-81-R**
               )
**RANDY WORKMAN, WARDEN,**   )
               )
        **Respondent.**   )

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, a state prisoner appearing through counsel, brings this action pursuant to 28 U.S.C. § 2254, seeking habeas relief from his state court conviction. United States District Judge David L. Russell referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A response has been filed, and thus the matter is at issue. For the following reasons, it is recommended that the petition be denied.

By this action, Petitioner challenges his conviction following a jury trial on one count of first degree murder, for which he was sentenced to life without parole. Case No. CF-2004-1212, District Court of Oklahoma County; Petition, p. 1-2; Response Ex. 3, p. 1. On direct appeal, the Oklahoma Court of Criminal Appeals affirmed Petitioner's conviction. <u>Morris v. State</u>, No. F-2006-428 (Okla. Crim. App. Oct. 24, 2007) (attached to Response as Ex. 3); Petition, p. 2. Petitioner did not seek certiorari or state post-conviction relief. Petition, p. 3.

Petitioner raises six grounds for relief.[1]  In Ground One, he alleges that the trial court should have granted a motion for mistrial after the judge met privately with the jury to discuss security concerns voiced by a juror to a bailiff after Petitioner was observed taking notes during the voir dire examination.  Petition, p. 2; Memorandum in Support of Petition, p. 6-7.  In a related argument, Petitioner argues in Ground Two that his right to be present during all critical stages of the trial proceedings was violated during the judge's meeting with the jury regarding the security concerns. Petition, p. 2; Memorandum in Support of Petition, p. 9. In Ground Three, Petitioner claims that his counsel was ineffective for failing to move for a new trial on the basis of alleged juror misconduct – also related to the incident forming the basis of Grounds One and Two.  Petition, p. 2; Memorandum in Support of Petition, p. 11.  In Ground Four,  Petitioner seeks habeas relief on grounds of prosecutorial misconduct; specifically, he argues that the prosecutor shifted the burden of proof by statements made during closing argument.  Petition, p. 2; Memorandum in Support of Petition, p. 15.  Fifth, Petitioner claims that there was insufficient evidence to support his conviction.  Petition, p. 3; Memorandum in Support of Petition, p. 19.  Six, and finally, Petitioner claims that his right to a fair trial was violated by the cumulation of these alleged errors.  Petition, p. 3; Memorandum in Support of Petition, p. 24.

---

[1]Petitioner initially raised seven grounds in support of his petition, but one of the grounds was  eliminated when Petitioner filed his Memorandum in Support of Petition. <u>Compare</u> Petition, p. 2 (Ground Three - admission of hearsay statements violated federal and state constitutional rights) <u>with</u> Memorandum in Support of Petition, p. 2.

## I. BACKGROUND

Shortly before midnight, on February 20, 2004, Oklahoma City police officers were dispatched to the Rockwell Villa Apartments regarding an assault. Trial Tr. Vol. 2, p. 75-77, 78-81. Upon arrival, officers discovered Rodney Perry laying deceased against a car in the parking lot of the apartment complex. Id. At trial,[2] three witnesses testified that Perry had been severely beaten by a group of men, one of whom was Petitioner.

The first witness, Demetria Tinner, stated that she had driven another woman to the Rockwell Villa Apartments on their way to visit a friend, and that upon entering the parking lot, she saw four men arguing with one man. Trial Tr. Vol. 2, p. 35-36, 40-41. Tinner testified all four of the men began beating the victim and stomping on him; she turned the car around in the circle drive behind the apartments and when she drove back by the victim was on the ground, shaking and making a gurgling noise. Id. at 42-43, 44-45. She then recognized the victim as someone she knew when she formerly lived at the Rockwell Villa. Id. at 37, 43-44. Tinner then called 911; a crowd had gathered, and one of the four men took off through the crowd. Id. at 44, 45. The other three got in a car and left. Id. at 45. At trial, she identified Petitioner as one of the men who had been beating and stomping Perry. Id. at 48-49.

Kurt Brazille testified that he was visiting his girlfriend at the Rockwell Villa, and

---

[2]One witness, Dewan Debose, was unavailable at trial, and so his preliminary hearing testimony was read into evidence. Trial Tr. Vol. 2, p. 114-117; Prelim. Hr'g Tr. p. 45-53 (Mar. 25, 2005).

while there, his nephew Dewan Debose had asked to use the phone. Trial Tr. Vol. 2, p. 130, 132, 133. Brazille would not allow him to use the phone in the apartment, and instead sent him to use a pay phone at the front of the complex. Id. at 133. Three or four minutes later, someone told Brazille that a fight had broken out around where the pay phone was located. Id. at 134. Concerned about his nephew's welfare, Brazille quickly made his way toward the front of the complex. Id. On the way, he met Debose and three other men walking toward him. Id. at 136. At trial, one of the men was identified by Brazille as the Petitioner. Id. Brazille's nephew told him that they "messed Rodney up," and asked Brazille if he wanted to see. Trial Tr. Vol. 2, p. 144. At about that same time, Brazille saw Petitioner and the other two men go back around to the other side of a car where the victim was; he could not see, but heard stomping and "skin slapping." Id. at 145-47. He then saw the three men that had been with his nephew get in a car. Id at 148-49. At that time, Brazille began to walk back to his girlfriend's apartment; he heard sirens and looked back toward the front of the complex and saw police coming. Id. at 149. About four minutes later, Petitioner and one of the other men involved in the assault tried to come into Brazille's girlfriend's apartment to use the phone. Id. at 149-50. Brazille refused, but gave them his stepson's cell phone to use. Id. at 150. Brazille overheard Petitioner asking the person on the other end of the line to meet him at a nearby convenience store. Id. at 150-51.

Debose testified that when he was outside the apartment he saw three men standing across from the victim; Perry said something to them as he exited one of the breeze ways in the complex. Prelim. Hrn'g Tr. p. 46-47. An argument ensued, and the three men "jumped"

4

Perry.  Id. at 47-48.  The victim was knocked down, and the three men began to beat and stomp him.  Id.  They left the victim for awhile, and then came back and resumed the attack, killing him.  Id. at 49, 51-52.  Debose identified Petitioner as one of three men who assaulted Perry.  Id. at 50.

## II. STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).  A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the petitioner's case.  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

If a state court resolves issues in a summary disposition with little or no legal reasoning, a federal habeas court still owes deference to the result. Paine v. Massie, 339 F.3d 1194, 1198 (10th Cir. 2003). A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." Id. (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)).

## III. DISCUSSION

### A. GROUNDS ONE AND TWO - DENIAL OF MISTRIAL AND VIOLATION OF RIGHT TO BE PRESENT AT CRITICAL STAGE OF THE PROCEEDINGS

Petitioner's first two grounds for relief both concern the trial court's handling of a jury communication in which some jurors expressed concern that Petitioner had made notes while their personal information was disclosed during voir dire. Petition, p. 4, 7; Memorandum in Support of Petition, p. 6. On the first day of testimony, during the break between the direct and cross examination of Mr. Brazille, the trial judge informed counsel that the bailiff had made her aware of the jury's concerns:

> THE COURT: During the very brief break the bailiff made me aware that the jurors had expressed to her a concern that your client was taking notes during jury selection and because this is gang stuff, they don't know what that means and they're concerned about their personal security.
>
> I went into the jury room during this break and said to them that I don't generally talk to the jurors during trial and that I had to be very limited in what I said but that in my history with the court, I am unaware of there ever being a time when jurors have been threatened or intimidated, and that I was confident that Mr. Morris' taking notes was so that he could communicate with you.

[DEFENSE COUNSEL]: Absolutely.

THE COURT: And would not be taking anything from the courtroom.

[DEFENSE COUNSEL]: No.

THE COURT: And so I wanted to put on the record their concern, also how I handled it. If you have objections or something that you wish that I would do in addition to that, I will be happy to address that.

[DEFENSE COUNSEL]: At this point I don't have any. Obviously the notes at the table weren't even to do with even the individual particulars of the prospective jurors, it was numbers only and he was just circling numbers that he didn't like or liked. So that's all that it was.

THE COURT: Well, I think that I have adequately expressed to them that they have no concern and that the same instruction that we give at the end of the trial which is at the conclusion of the trial they may discuss or not discuss with anybody and if anybody persists, that we'll be happy to handle that for them. So I just wanted you to know that.

[DEFENSE COUNSEL]: Sure.

THE COURT: Okay. Thank you. Would you bring the jury in please?

Trial Tr. Vol. 2, p. 153-54.

The following morning, Petitioner's counsel raised a concern regarding the events of the previous day:

[DEFENSE COUNSEL]: Your Honor, for the record, the Court advised us after you took the bench after the afternoon break yesterday afternoon, around the 4:00 hour, that you had been inadvertently contacted by at least one of the jurors or maybe a couple of them.

THE COURT: What I advised you to was that the bailiff had told me that they had expressed to her a concern.

...

[DEFENSE COUNSEL]: All right. And I'm not misstating, it caught me flatfooted yesterday. You called us to the bench and advised us that there had been an issue. After I've had time to think about this, Your Honor, I'm disturbed that the jury would have this concern and that they would have this contact with the Court because, Your Honor, it indicates to me that they have collectively or at least individually talked about my client.

And it had not gone to charge, it has not gone to the deciding stage and by the very nature of their concern that they expressed to the Court, they were concerned. The gist I get and the Court can correct me, but the gist was that they were concerned that my client was taking notes in voir dire and because of the gang-related allegations in this case, they were concerned for their safety or any repercussions that could be made upon them as a result of this case.

It is my understanding and I'm going to go to the Court because I'm not going to misstate the Court, and it happened quick yesterday, but the gist of it was, my understanding, the Court had relayed to them that you had never seen anything like that happen in your experience. But you can correct me. I'm not putting words in your mouth. I really don't remember. It was a daze to me.

...

THE COURT: I told them that in my history with the court I am unaware of any instance where a juror has been harassed by witnesses or family or friends.

[DEFENSE COUNSEL]: Okay.

THE COURT: And that I knew that being in a trial was stressful but that we were all in the courtroom all the time and that at the conclusion of the trial we usually have the deputies escort them to their cars, and that I was pretty certain that any note taking that the Defendant was doing during voir dire would have been communication with you and not something that he was trying to memorialize to keep with him.

[DEFENSE COUNSEL]: Okay, Well, in light of that, Your Honor, still, I stand by my concerns because I believe that by them talking about my client before they even get the charge to deliberate, that that's a violation of their oath.

Number two, by the very nature of the concern they expressed, it shows

to me that I'm facing an unlevel playing field now because they have some sort of either imagined fear or real fear or whatever you want to call it from my client.

They're concerned about my client because they were concerned that somehow he would know who they are or where they live or that there was consequences.

THE COURT: What are you asking for?

[DEFENSE COUNSEL]: I'm asking for a mistrial. Or - - I'm asking for a mistrial because I believe we have an unlevel playing field now. I believe they've violated their oath as jurors because they've talked about my client and I'm moving for a mistrial. I don't think I can get a fair trial - - my client get a fair trial.

I'm concerned. I'm sincerely concerned after thinking about this last night. I haven't got anybody's counsel. I just - - it caught me flatfooted yesterday. We were at the end of the day and then after I thought about it more - - I didn't tell my client about it until this morning, quite frankly, because I didn't want to put fear into him but I thought about this and I just don't think the jury can be fair.

They've expressed a concern, a fear for my client, and I don't think that fear can be overcome. And I believe because of the way they've expressed it, they've talked about my client, obviously. And they're instructed not to talk about my client. They can't talk about my client until this case is submitted to them.

So they've already got a preconceived idea about my client even before he takes the witness stand, a preconceived idea before they even hear all the State's case.

Trial Tr. Vol. 3, p. 8-12. In addition to mistrial, defense counsel moved the trial court for

an individual voir dire of the jurors in order to determine what they discussed. Id. at 12, 13.

The trial court agreed and, after handling another unrelated matter, moved the proceedings

to chambers in order to speak to the jurors individually. Trial Tr. 13, 19. The trial court

asked defense counsel if he would waive his client's presence during the questioning, and he agreed. Id. at 19. The trial court then examined the jurors individually in the presence of counsel for both sides, and defense counsel also asked questions of each juror. Id. at 19-70. Following the examination of jurors, defense counsel renewed his motion for mistrial. Trial Tr. Vol. 3, p. 70-71. In support, he argued that the voir dire had revealed that some of the jurors had expressed a concern that friends of Petitioner might retaliate, and that Petitioner might give their personal information to others. Id. at 70-71:

> [DEFENSE COUNSEL]: I know what the jurors have said back in chambers but I just think there's the appearance of not a level playing field in them even having these conversations, puts some apprehension in my mind that they could honestly be fair and impartial.
>
> THE COURT: Well, apprehension is not the legal standard.
>
> [DEFENSE COUNSEL]: Sure, I understand.
>
> THE COURT: And the legal standard is manifest necessity. Every single juror has told me that they have not formed an opinion as to your client's guilt or innocence. Most of them have expressed that it wasn't really so much your client, but the overall circumstances, the people in and out of the courtroom, witnesses and witnesses' boyfriends and, frankly, the kinds of things that we all observe and are aware of and talk about among ourselves.
>
> When a juror tells me that they can be fair and impartial and that they have not formed an opinion as to your client's guilt or innocence, I'm under the law to assume their truthfulness. I've had no other indicia of them being untruthful about that.
>
> Not a single juror has revealed to us that there was any discussion of the facts or that there was anything specific, it was more of the unsaid, what happens if this information gets out.

Trial Tr. Vol. 3, p. 71-72.

Petitioner moves for habeas relief on grounds that the trial court erred in not granting a mistrial, and that the trial court's handling of the matter denied his right to be present during the critical stages of his trial.

## 1. TRIAL COURT'S FAILURE TO GRANT A MISTRIAL

Petitioner claims that the trial court's failure to grant a mistrial denied his right to an impartial jury. Petition, p. 4-7; Memorandum in Support of Petition, p. 7.

Respondent contends that the factual findings made by the state courts are presumed correct unless Petitioner can demonstrate by clear and convincing evidence that they were erroneous. Response, p. 7. He further argues that Petitioner has not even alleged that the factual findings were incorrect, making the presumption of correctness applicable to his first ground for relief. Id.

In denying this claim of error on direct appeal, the Oklahoma Court of Criminal Appeals stated:

> We review a trial court's ruling on a motion for mistrial for an abuse of discretion. An abuse of discretion is a "clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented in support of and against the application." Here, the judge's decision is amply supported by the record and it is [Petitioner's] position that is clearly against the logic and facts because his premise that the jury prematurely discussed the facts of the case is contradicted by the record.

> Specifically, the record shows that under questioning by the judge and defense counsel, the jurors unanimously agreed that none of them discussed any aspect of the case among themselves. Jurors did state, however, that some of their number voiced concern about disclosing personal and family member information in open court where [Petitioner] seemed to be writing it down and where there were many people coming and going throughout the courtroom. Some jurors stated that it appeared to them at the time that the case might be

gang-related, based on the appearance of some of the persons present in the courtroom, and that this caused them some degree of apprehension when their personal information was being discussed so openly.

Because each juror expressed willingness to fully and fairly listen to all of the evidence, and because each juror denied discussing the case, the trial court's denial of [Petitioner's] motion for mistrial was not clearly against the logic and effect of the facts presented. The trial court judge did not abuse her discretion in denying the motion for mistrial.

Response, Ex. 3, p. 3-4.

The right to an impartial jury is guaranteed by both the Sixth Amendment and Fourteenth Amendment:

The Sixth Amendment as incorporated by the Fourteenth Amendment guarantees the right of a trial by jury in all state criminal cases. The Fourteenth Amendment's Due Process Clause independently requires the impartiality of any jury empaneled to hear a case in a state court. "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process."

Goss v. Nelson, 439 F.3d 621, 627 (10th Cir. 2006) (citations omitted); see also Lucero v. Kerby, 133 F.3d 1299, 1307 (10th Cir. 1998). Traditionally, a juror who has "formed an opinion" is one who cannot be impartial. Morgan v. Illinois, 504 U.S. 719, 727(1992) (quoting Reynolds v. United States, 98 U.S. 145, 155(1879) and Irvin v. Dowd, 366 U. S. 717, 721-722(1961)). However, due to the "broad deference traditionally accorded to trial courts in determining jury selection procedures and conducting voir dire" a petitioner must show that the trial court committed manifest error in finding that the jury as a whole was impartial. Lucero, 133 F.3d at 1308 (quotations and citations omitted). To do this, a petitioner must demonstrate either actual prejudice or that there was such a high probability of

12

prejudice that the trial must be deemed to be inherently lacking in due process. Id. Also, as argued by Respondent, a state court's findings as to the impartiality of individual jurors is a finding of fact entitled to a presumption of correctness in this federal habeas proceeding. See Patton v. Yount, 467 U.S. 1025, 1036-38 (1984). In addition, "[a]bsent evidence to the contrary, we presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court." Lucero, 133 F.3d at 1309 (quotation omitted).

The trial court's decision to deny a mistrial was reached after her individual examination of each juror, and was based on her finding that they had neither discussed the case nor formed an opinion as to Petitioner's guilt or innocence. These findings and those of the Oklahoma Court of Criminal Appeals are not only presumed correct in this proceeding, but amply supported by the record. Upon questioning by the court and defense counsel, each juror responded that the jury had not discussed the case, and each stated that he or she could be fair and impartial. Trial Tr. Vol. 3, p. 20, 24-25, 27, 30-31, 35-36, 39, 40, 42, 45, 47-48, 52-53, 56, 58, 62-63, 64-65, 68-69.

Petitioner claims that the responses of one juror in particular, Juror Myers, show that he believed Petitioner needed to be convicted "or he would be turned loose on the community." Memorandum in Support of Petition, p. 10. However, the record of Juror Myers' examination, when considered in its entirety, does not support Petitioner's claim. After Juror Myers told the trial court that the jury had not discussed the case, the following colloquy ensued:

THE COURT: Were you one of the people that expressed some concern about

security or some apprehension about anything?

JUROR MYERS: I don't think so.  I agreed with it when I heard it but I didn't bring it up.

THE COURT: Okay.  I think I stated clearly yesterday, but let me state again, most of the time when a [d]efendant is writing things in the courtroom they're communicating with their lawyer and these - - they don't have the opportunity to take all these notes and stuff out of the courtroom.

JUROR MYERS: Good.

THE COURT: Mr. Myers, at this point in the trial have you formed an opinion as to whether or not the Defendant is guilty or not guilty?

JUROR MYERS: No.  He's still innocent..  I haven't heard the whole deal.

THE COURT: All right.  Can you be a fair and impartial juror in this case?

JUROR MYERS: I think so.

THE COURT: Do you have any concern at all that we need to visit with you about?

JUROR MYERS: I haven't talked to anybody about this but I'm concerned. Number one, I want to tell you that my wife was a juror about 15 years ago and I think it was under the different rules that you were talking about that the [d]efendant was there and the individual jurors were asked questions about where they lived and the juror - - the [d]efendant was writing all this stuff down.

THE COURT: Okay.

JUROR MYERS:  And it was like they were writing it all down.  That's what the [d]efendant was writing down.  And my wife thought that was a little odd that they know all about us but we don't know anything about them.

THE COURT: [Defense counsel], when I when back into the jury room yesterday I told them that once upon a time was a rule that jurors  - -

JUROR MYERS: Yeah, that was 15 years.

THE COURT: - - that jurors gave their addresses but that that was no longer the rule and partially because it made people uncomfortable and we don't want them to be uncomfortable about this. As far as you know - -

JUROR MYERS: One other concern.

THE COURT: As far as you know, did anything happen as a result of that information being given to that individual in the courtroom 15 years ago?

JUROR MYERS: No. No, it was just a goosey feeling that my wife had.

THE COURT: Okay. I just wanted to clarify.

JUROR MYERS: If we don't convict this guy, we're going to turn him loose and he's got my address. Or if we do convict him, he's going to give it to his buddy and the buddy is going to come and get me.

THE COURT: The second concern that you had?

JUROR MYERS: Seems like this is a gang-related case. Nobody has said that. It hasn't come up in the court but I'm worried if we don't convict the guy, we're going to turn him loose in the community.

And I know that I'm only supposed to be concerned about the evidence and I'm thinking about what I was. And I know that I'm supposed to only think about the stuff that's presented in the case in the courtroom, evidence.

THE COURT: You're right. You are. And here is kind of what I would tell you. At the conclusion of this case, undoubtedly you're going to have questions and we'll do our best to answer them but all of the what ifs are not addressed in the law that I give you.

JUROR MYERS: I am supposed to ignore all that stuff.

THE COURT: That's right. Can you do that?

JUROR MYERS: Yeah. I won't like it but that's what my job is.

THE COURT: Okay. Do you have any doubt in your mind that you can be fair and impartial in this case?

JUROR MYERS: No.  That's what I'm going to do.

THE COURT: Okay.  Great.

[DEFENSE COUNSEL]: I have a couple of questions.  It's obviously became quite apparent that there was some discussion yesterday afternoon in the jury room about some sort of, for lack of a better word, apprehension that my client was taking notes at the table during voir dire, is that correct?

JUROR MYERS: Yes.

[DEFENSE COUNSEL]: And you said that you might have joined in, you didn't initiate that conversation, you may have joined in to the conversation, is that correct?

JUROR MYERS: One guy said he was going to go talk.  I said, "Yeah, go find out about that."

[DEFENSE COUNSEL]: Was there some serious concern or fear raised by members of the jury that they had fear for my client?

JUROR MEYERS: No, I think it was just kind of a general - - a general, how come he's writing notes.

[DEFENSE COUNSEL]: Was there a fear that will he would do something or somebody he knew would do something, or if you know.

JUROR MYERS: We didn't know.  It wasn't a big deal.  It was a concern that was expressed by the fella with the shaved head and the beard and I don't know his name and I was sitting next to him.  And I said, "Yeah, go find out about that.  We need to find out."

THE COURT: You understand the admonishment that I give you guys every time you leave the courtroom?

JUROR MYERS: You bet.

Trial Tr. Vol. 3, p. 52-56.  The undersigned finds that these answers reflect a juror who was

both candid and conscientious; furthermore, he stated that he had and would continue to

16

conform to his oath as a juror.  He also unequivocally stated that he had not made up his mind. Although he admitted that he had personally thought about some matters that were not in evidence, specifically the matter of gang activity, he also stated that he knew he was to disregard such thoughts in reaching his verdict.  Juror Myers expressed an understandable and natural concern for his safety in the context of such a criminal proceeding, and it is both unrealistic and constitutionally unnecessary to expect perfection of a juror.  As stated by the United States Supreme Court:

> The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

Smith v. Phillips, 455 U.S. 209, 217 (1982); cf. United States v. Small, 423 F.3d 1164, 1180 (10th Cir. 2005) (affirming decision of trial court denying mistrial after venireperson expressed concern for personal safety because case involved drugs and seven defendants and ten marshals were present: "Any prejudice that may have resulted ....was adequately addressed by the district court's explanation of the presence of the marshals in the courtroom.").

The responses of Juror Myers show that he was both capable and willing to decide the case solely on the evidence.  Indeed, after admitting that he had personal safety concerns he – unprompted – acknowledged "that I'm supposed to only think about the stuff that's presented in the case in the courtroom, evidence."  Trial Tr. Vol. 3, p. 54.

Furthermore, Petitioner has shown nothing that would clearly and convincingly rebut the presumption of correctness of the court's findings. After every juror had been examined, even defense counsel could point to no fact revealed during that examination which supported a conclusion that the jury was not impartial. Indeed, in making his motion for mistrial following the individual voir dire, counsel could only point to his "apprehension" regarding the significance of the security concerns, and the "appearance" of "not a level playing field." See Trial Tr. Vol. 3, p. 70-71. The trial court correctly concluded that such was not sufficient to show the manifest necessity for a mistrial.

Accordingly, the undersigned finds that the Oklahoma Court of Criminal Appeals' decision neither resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)-(2). It is therefore recommended that relief be denied on this ground.

## 2. VIOLATION OF RIGHT OF CONFRONTATION

In the second ground related to the jury's expressed concern regarding Petitioner's note-taking during voir dire, he claims that the court's initial, private meeting with the jury violated his right to be present at all critical stages of the proceedings. Petition, p. 7; Memorandum in Support of Petition, p. 9. He claims that the statements of one juror in particular show that the jury's concern went to the "core of the merits of the case," and so his presence was necessary to defend himself against the charges. Memorandum in Support

of Petition, p. 9. He claims that Juror Myers expressed his belief that the jury needed to convict Petitioner, or he would be turned loose on the community. Id.

Respondent concedes that under clearly established federal law, a criminal defendant has the right to be present during all critical stages of his criminal proceedings. Response, p. 15. However, he argues the right to be present only extends to those stages of the proceeding where the defendant's presence would have a "reasonably substantial" relation to the "fulness of his opportunity to defend against the criminal charge." Id. at 16 (quoting Bland v. Sirmons, 459 F.3d 999, 1020 (10th Cir. 2006). He claims that the substance of the meeting between the judge and the jury had nothing whatsoever to do with the merits of the case against Petitioner. Id. at 18. Respondent contends that Petitioner's presence would have actually been counterproductive during the meeting, as it would have made the jury less forthcoming about its concerns. Id.

On direct appeal, the Oklahoma Court of Criminal Appeals held:

> A defendant's constitutional and statutory rights to be present at trial are rooted in the Sixth Amendment's right to confront witnesses and the Fifth Amendment's due process right to present a defense.... [H]owever, a defendant's right to be present has limits. Specifically, a defendant must be allowed to be present only when his presence is reasonably related to his opportunity to defend. Because the record shows that this brief meeting between the judge and jury was on a subject unrelated to the merits of the case, the meeting and resulting communications between the judge and jury did not impact [Petitioner's] ability to defend against the charges; nor did it impinge in any way on his ability to confront witnesses. There is no constitutional violation.

Response, Ex. 3, p. 5-6 (citations omitted).

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal

defendant to be present at trial to confront witnesses and the evidence against him. United States v. Gagnon, 470 U.S. 522, 526 (1985). Through the Due Process Clause of the Fifth and Fourteenth Amendments, this right to be present has been extended to other critical stages of trial beyond those related to the defendant's rights to confronting witnesses and evidence. See id. That is, a defendant "has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (internal quotation marks omitted). As explained by the Tenth Circuit Court of Appeals:

> Although a defendant has a due process right "to be present ... whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," this right does not require that a defendant be present at all proceedings. Instead, the constitutional right to be present exists "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." For example, a defendant need not be present during all communications between a judge and a juror. When the defendant's "presence would be useless, or the benefit but a shadow," due process does not require the defendant's presence at a trial proceeding. In determining whether exclusion of a defendant from a proceeding violated due process, we consider the proceedings "in light of the whole record."

Bland v. Sirmons, 459 F.3d 999, 1020 -1021 (10th Cir. 2006); United States v. Gagnon, 470 U.S. at 526 ("The mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror ...," quoting Rushen v. Spain, 464 U.S. 114, 125-26 (1983)). With this standard in mind, the undersigned finds that the decision of the Oklahoma Court of Criminal Appeals on this point was neither contrary to or an unreasonable application of clearly established Federal law as determined

by the Supreme Court, nor was it based on an unreasonable determination of the facts in light of the record.

As noted above, one juror sent an inquiry to the trial court through the bailiff asking about Petitioner making notes as they revealed their personal information during voir dire. The trial judge then met very briefly with the jury as a whole, assuring them that during her time with the court, she had never known a juror to be threatened or intimidated. She also explained that Petitioner was probably writing notes to communicate with his lawyer, and would not be taking anything from the courtroom. Trial Tr. Vol. 2, p. 152-53. After the break the trial judge informed counsel what had occurred and how she had handled it, and then asked for any objections or requests regarding the issue. Id. at 153.

In light of the record as a whole, the undersigned finds that this brief and limited interaction between the trial judge and the jury did not thwart Petitioner's right to a just and fair proceeding. Petitioner's presence would have been of little if any benefit; indeed, Petitioner's presence might have been counter-productive to the trial court's effort to assure the jury in the most general of terms. Finally, any remaining doubt as to the effect of the exchange on Petitioner's due process rights is removed upon reading the subsequent individual voir dire. That questioning corroborates the very limited interaction between the trial court and the jury, and that although Petitioner's note-taking might have been the catalyst for the concern, the concern itself was of a general nature and unrelated to the merits of the charge against him. It is therefore recommended that relief be denied on Ground Two.

## B. GROUND THREE - INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his third ground for relief, Petitioner asserts that his trial counsel was constitutionally ineffective for (1) failing to move for a new trial based on juror misconduct; and (2) failing to object to comments made by the prosecutor in closing argument. With regard to the motion for new trial, Petitioner contends that the trial court would have had more time to consider the incident involving the jury's concerns regarding his note-taking if faced with a motion for new trial. Memorandum in Support of Petition, p. 12. He also claims that trial counsel failed to object to comments made by the prosecutor that allegedly shifted the burden of proof to Petitioner. Id. at 12-13.

Respondent counters that Petitioner cannot show that any of the alleged errors caused prejudice, a necessary showing under a claim of ineffective assistance of counsel. Response, p. 23. He contends that if trial counsel had moved for a new trial the result of the proceeding would have been the same. Id. In support, he notes the trial court's opinion in the context of the motion for mistrial that there was nothing wrong with the court addressing the jurors about their security concerns. Id. at 24. With regard to the prosecutor's comments, Respondent argues that an objection would have only subjected the comments to a higher level of scrutiny on appeal, and that even under that more rigorous standard, the comments did not deny Petitioner a fundamentally fair trial. Id. at 24-25.

In addressing this claim on direct appeal, the Oklahoma Court of Criminal Appeals reached the following decision:

> To prevail on his ineffective assistance claims, [Petitioner] must

demonstrate that counsel acted in a professionally unreasonable manner by failing to object to the ... prosecutor's comments, or that he acted unprofessionally by failing to move for a new trial. In addition, [Petitioner] must also demonstrate there is a reasonable possibility that a different outcome would have resulted if counsel had objected or moved for a new trial. As we have found no merit to [Petitioner's] substantive claims on each of these issues, it is clear that any objections or motions for new trial raised on these grounds would have been properly overruled and the ultimate outcome unchanged. Trial counsel therefore was not ineffective.

Response, Ex. 3, p. 15-16.

As correctly noted by the Oklahoma Court of Criminal Appeals, to establish that counsel was ineffective, a habeas petitioner must show (1) counsel's performance was constitutionally deficient and (2) counsel's deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984). Performance is deficient if counsel's "representation [falls] below an objective standard of reasonableness." Id. at 688. Errors are prejudicial if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Counsel's performance is evaluated from the attorney's perspective at the time the assistance is rendered and considered in light of all the circumstances prevailing at that time. Id. at 689. There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." Id. Because both deficient performance and prejudice must be established to prove ineffective assistance, it is appropriate to consider whether prejudice is shown from an alleged error without determining whether counsel performed deficiently. Id. at 697. In light of this standard, the undersigned agrees with Respondent that Petitioner has failed to show prejudice from trial counsel's alleged ineffective assistance.

23

In Oklahoma, a "court in which a trial has been had upon an issue of fact has power to grant a new trial when a verdict has been rendered against a defendant by which his **substantial rights have been prejudiced**...." 22 Okla. Stat. tit. § 952 (emphasis added).

First, Petitioner claims that counsel was ineffective for failing to move for a new trial on grounds that the jury was not impartial and that Petitioner was denied his right to be present when the trial court met briefly with the jury. It is apparent from the record of proceedings – which includes individual voir dire of each juror and argument of counsel – that the trial court did not believe Petitioner's right to an impartial jury had been violated when some jurors questioned the security of their personal information. See Trial Tr. Vol. 3, p. 71-73. Petitioner contends that "[h]ad trial counsel moved for a new trial, the trial court could have re-examined the issues of fact and taken more time to properly examine Juror Myers and the other jurors about what [Petitioner] submits was their fixed beliefs (prior to deliberation) of his guilt of the crime charged." Memorandum in Support of Petition, p. 12. However, Petitioner does not argue that the trial court failed to apply the correct legal standard in considering defense counsel's motion for mistrial, or that something occurred *after* the trial court's individual voir dire that might have changed the court's finding of impartiality. Furthermore, as noted above, the trial court thoroughly examined Juror Myers and was well aware of his concerns. There is no indication that the court needed additional information to determine that juror's impartiality. Thus, the undersigned finds no reasonable probability that the outcome of a motion for new trial on this ground would have been any different than the outcome of the motion for mistrial.

Second, Petitioner claims that trial counsel was ineffective for failing to object to two comments made by the prosecutor during closing argument. Id. at 12. He claims that the comments in question improperly shifted the burden of proof to him. Id. 13-14. In Ground Four, Petitioner also raises a stand alone claim regarding these two comments and one other that was objected to by counsel. Memorandum in Support of Petition, p. 12, 15. For the reasons discussed below in connection with the stand alone claim, the undersigned finds Ground Four to lack merit; thus, the undersigned recommends that this claim also be denied on grounds that there is no reasonable probability that the outcome of the proceeding would have been different if an objection had been made.

### C. GROUND FOUR - PROSECUTORIAL MISCONDUCT

In Ground Four, Petitioner claims that the prosecutor improperly shifted the burden of proof as a result of comments made during closing argument. Petitioner complains about three comments. The first was in the context of the prosecutor's argument that the testimony of the witnesses was consistent:

> [THE STATE]: Now do you think those witnesses are so sophisticated that they could get together and make that up to where it just happens to fit? Is that what you think this is? A conspiracy between Demetria Tinner, Kyle Laws, Kurt Brazille, is that what this is?
>
> This Defendant couldn't even give you a reason that these people would all get together and do this. You've heard no evidence that would indicate to you these people are not telling you what they saw.

Trial Tr. Vol. 3, p. 108. Second, Petitioner complains of a similar comment specific to Demetria Tinner:

> [THE STATE]:Who would want to be involved in this? Who would want to take that stand and point the finger at Howard Morris unless it were true? There is no evidence presented in this case whatsoever that Demetria Tinner took the stand to do anything but to tell the truth. No conspiracy shown, no bias. What can she gain by taking the stand and pointing the finger at Howard Morris? Nothing.

Trial Tr. Vol. 3, p. 146. Defense counsel did not object to either of these two comments, but the third comment did draw an objection:

> [THE STATE]: Second, the Defense never shows any reason to question eyewitness credibility. [Defense Counsel] never establishes a conspiracy among these individuals to lie. He has the right to present evidence of that and he didn't. What can they gain by doing so? And, secondly, wouldn't you expect a more complete thorough and unquestionable story if they did indeed conspire to lie?
>
> [DEFENSE COUNSEL]: Objection, Your Honor. May I approach?
>
> THE COURT: You may.
> (Thereupon, the following was had at the bench).
>
> [DEFENSE COUNSEL]: Your Honor, I take issue with this part of the closing argument. The Defendant has no obligation to recall any testimony. The burden is strictly on the State of Oklahoma and any comment that the Defense is lacking in putting on particular evidence I believe is improper.
>
> [THE STATE]: Judge - -
>
> THE COURT: I don't believe that what he said shifts the burden. He just said that you never established that.

Trial Tr. Vol. 3, p. 156-57.

Respondent argues that a claim of prosecutorial misconduct will only result in habeas relief if the comment so infected the trial with unfairness that the resulting conviction is a violation of due process. Response, p. 28. He also contends that a prosecutor pointing out

that a petitioner failed to substantiate claims made in his defense does not necessarily result in a fundamentally unfair trial. Id. He urges that the prosecutor was not making any comment on the presumption of innocence when he pointed out that Petitioner failed to explain why three independent eyewitnesses would implicate him in the crime if he were innocent. Id. at 29.

On direct appeal, the Oklahoma Court of Criminal Appeals stated:

> Morris did not object to the first two comments. Therefore their use is reviewed for plain error. Morris objected to the third remark, but the objection was overruled by the trial court judge. We review a trial court's overruling of a defendant's objection to a prosecutor's comments during closing argument for an abuse of discretion. Regardless of which standard is applied, however, we find not merit in any of these claims of prosecutorial misconduct.

> The burden of proof is on the State to prove every element of the crime charged beyond a reasonable doubt. The State may not attempt to shift the burden of proof to the defendant during closing argument.

In this instance, Kurt Brazille and Demetria Tinner both testified that they saw Morris beating the victim Rodney Perry. Dewan Debose's preliminary hearing testimony, which was read into the record because of his unavailability for trial, indicated that he also saw Morris beating the victim. When Morris testified at trial, he claimed he was at home asleep when the beating occurred and denied knowing the victim, Kurt Brazille, Demetria Tinner, and Dewan Debose. When asked why these three individuals would lie and say that they saw him beating the victim, Morris asserted that their testimony was the result of mistaken identity. When the prosecutor told the jury in closing that "you've heard no evidence that would indicate to you these people are not telling you what they saw."; "[t]here is no evidence presented in this case whatsoever that Demetria Tinner took the stand to do anything but tell you the truth"; and that Morris "ha[d] the right to present evidence of that and he didn't," the prosecutor was doing nothing more than commenting on the state of the evidence supporting Morris's asserted defense of mistaken identity. This was fair comment on the evidence on an issue raised by Morris when he testified. The prosecutor's statements were not improper.

Response, Ex. 3, p. 12-14.

Ordinarily, "[h]abeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." Cummings v. Evans, 161 F.3d 610, 618 (10th Cir. 1998) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974)). However, "[w]here prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence or privilege against self-incrimination, a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right." Torres v. Mullin, 317 F.3d 1145, 1158 (10th Cir. 2003); Hamilton v. Mullin, 436 F. 3d 1181, 1187 (10th Cir. 2006). This determination is made "only after considering all of the surrounding circumstances, including the strength of the state's case." Malicoat v. Mullin, 426 F.3d 1241, 1255 (10th Cir. 2005).

During cross-examination, Petitioner stated that he did not know any of the three eyewitnesses against him, and did not know of any relationship between the three eyewitnesses that would cause them to form a conspiracy against him. Trial Tr. Vol. 3, p. 82, 83, 88-89, 90. The only explanation Petitioner offered for Tinner, Brazille, and Debose's identification of him as one of Perry's attackers was mistaken identity. Id. at 83, 88, 90. When asked if he could think of any reason other than mistaken identity why they would all three identify him, he said "I don't know." Id. at 90. Thus, in the State's closing argument, the prosecutor was not shifting the burden of proof to Petitioner, but commenting on this evidence and theory of defense which Petitioner himself presented during cross-examination. Compare, Trial Tr. Vol. 3, p. 108 with Trial Tr. Vol. 3, p. 89-90. Not only were the three

remarks fair comment on Petitioner's own testimony, the prosecutor referred to the presumption of innocence and the State's burden of proof on several occasions during both parts of the closing argument. Trial Tr. Vol. 3, p. 96, 124, 141, 159, 160, 161. For example, the prosecutor stated "[t]he Defense doesn't have to call witnesses, the Defense doesn't have to deliver opening or closing statements. In fact, [Defense Counsel] and Mr. Morris can just sit there and do nothing. It's our burden." Trial Tr. Vol. 3, p. 160.

Here, in light of the proceedings as a whole, the undersigned finds that the remarks were not of such a character that the jury would naturally and necessarily shift the burden of proof to Petitioner. Cf. Compare Delgado v. Barreras, No. 97-2007, 1997 WL 785525 at *2 (10th Cir. Dec. 22, 1997) (no prosecutorial misconduct where prosecutor's remarks were not a direct statement on the presumption of innocence and remarks were in response to defense counsel's comments during closing argument).[3] The Oklahoma Court of Criminal Appeals' resolution of this issue is thus not contrary to or an unreasonable application of clearly established federal law and relief on Ground Four of the Petition should be denied.

### D. GROUND FIVE - INSUFFICIENCY OF THE EVIDENCE

In Ground Five, Petitioner contends that the evidence was insufficient to support a conviction for first degree murder. Petition, p. 11; Memorandum in Support of Petition, p. 19. He claims that the "third element of murder in the first degree," that the death was

---

[3]This unpublished disposition is cited as persuasive authority pursuant to Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

caused by the Petitioner, "was not met except in the context of witness credibility." Memorandum in Support of Petition, p. 20.

Respondent contends that in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of first degree murder beyond a reasonable doubt. Response, p. 31. He claims that three witnesses independently identified Petitioner as one of the men who attacked Perry. Id. at 33.

In reviewing this claim on direct appeal, the Oklahoma Court of Criminal Appeals found:

> Three witnesses identified Morris as one of Perry's attackers and described the severity of the savage beating. Even without any physical or forensic evidence of Morris's participation, this eyewitness testimony was sufficient evidence from which the jury reasonably could conclude that Morris caused Perry's death. Furthermore, the question of whether the witnesses' testimony was worthy of belief is not relevant here. The witnesses were tested under cross-examination at trial. Any question as to their credibility was resolved by the jury. By rendering a verdict of guilty, the jury obviously found the eyewitness testimony credible, and we must honor that choice as it supports the verdict.

Response, Ex. 3, p. 15.

The Supreme Court set forth the standard of review for insufficiency of the evidence claims in Jackson v. Virginia, 443 U.S. 307 (1979). In that case, the Court held that the relevant question in considering such a claim, "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319; see also Romero v. Tansy, 46 F.3d 1024, 1032 (10th Cir. 1995). This standard gives the trier of fact full

responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Thus, in applying this standard, this Circuit has held that the Court may not weigh conflicting evidence or consider the credibility of witnesses. Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993). Rather, the Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Id.

As noted above, the analysis of a federal habeas challenge to the sufficiency of the evidence begins with consideration of the crime's essential elements. Okla. Stat. tit. 21 § 701.7(A) provides: "A person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof." Thus, the elements of first-degree malice murder are: (1) the unlawful, (2) death of a human, (3) caused by the defendant, (4) with malice aforethought. OUJI-CR 4-61 (Second). Sufficient evidence exists to support a conviction for first degree murder when the defendant has participated in a beating despite the medical examiner's inability to pinpoint the fatal blow. Spears v. State, 900 P.2d 431, 438-39 (Okla. Crim. App. 1995).

After viewing the evidence in the light most favorable to the prosecution, the undersigned finds that any rational trier of fact could have found all of the essential elements of the crime of murder in the first degree beyond a reasonable doubt. Three percipient witnesses identified Petitioner as one of the men involved in the beating of the victim. Trial

Tr. Vol. 2, p. 41-51, 54 (Demetria Tinner); Prelim. Hr'g Tr. 45-52 (Dewan Debose); Trial Tr. Vol. 2, p. 136-39, 141-43, 146-47, 149-52 (Kurt Brazille). Forensic pathologist Chai Choi testified that the cause of death was a head injury, and that the injuries the victim received were consistent with being punched, beaten, and stomped. Trial Tr. Vol. 2, p. 113. Although Petitioner argues that the eyewitnesses lacked credibility for various reasons, under the <u>Jackson</u> standard the trier of fact has full responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Jackson</u>, 443 U.S. at 319. Accordingly, it is recommended that relief be denied on Ground Five.

### E.  GROUND SIX -- CUMULATIVE ERROR

Finally, in Ground Six, Petitioner alleges that the cumulative effect of the alleged errors deprived him of a fundamentally fair trial. Memorandum in Support of Petition, p.24. Respondent argues that cumulative error analysis only applies to constitutional errors, and that Petitioner has failed to show any error at all, much less errors of a constitutional magnitude. Response, p. 34-35. He claims that the Oklahoma Court of Criminal Appeals found no errors, harmless or otherwise, in its review on direct appeal. <u>Id.</u> at 35. Indeed, the Court stated: "This Court has repeatedly held that a cumulative error argument has no merit when we do not sustain any of the other errors raised. Because we have examined each of [Petitioner's] allegations in detail and found no error, relief is not warranted on this claim." Response, Ex. 3, p. 17 (citations omitted).

"Cumulative error analysis is an extension of harmless error and conducts the same

inquiry as for individual error, focusing on the underlying fairness of the trial." <u>Darks v.</u> <u>Mullin</u>, 327 F.3d 1001, 1018 (10th Cir. 2003) (citations and internal quotations omitted). The cumulative effect of individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. <u>Duckett v. Mullin</u>, 306 F.3d 982, 992 (10th Cir. 2002). Here, the undersigned finds that Petitioner has failed to establish any error, harmless or otherwise; therefore, there is no basis upon which to find cumulative error. <u>See,</u> <u>e.g.</u>, <u>Gonzales v. Tafoya</u>, 515 F.3d 1097, 1126 (10th Cir. 2008) (denying petitioner's claim that he was prejudiced by the cumulative effect of his counsel's errors where court concluded counsel's performance was not constitutionally deficient and, therefore, there was no error to cumulate), <u>cert. denied</u> 129 S. Ct. 211 (2008); <u>United States v. Caballero</u>, 277 F.3d 1235, 1250 (10th Cir.2002 ) ("Cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.") Therefore, Petitioner's claim of cumulative error is meritless, and it is recommended that relief be denied on Ground Six.

## **RECOMMENDATION**

Based on the foregoing findings, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court on or before August 17, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is further advised that failure to file a timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. <u>Moore v. United States</u>,

950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all the issues referred to the undersigned Magistrate Judge in the captioned matter.

   **ENTERED this 27th day of July, 2009.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE